COX, Circuit Judge, dissenting:

I respectfully dissent from the holding that Holsomback was denied the effective assistance of trial counsel. Holsomback's claim does not satisfy either prong of the Strickland test; he did not make the requisite showing either (1) that counsel's performance was deficient, or (2) that the deficient performance prejudiced the defendant. I would accordingly affirm the decision of the district court.

The relevant portion of Holsomback's claim, as framed by the district court, was that he "received ineffective assistance of trial counsel because his attorney (a) failed to call Dr. Nolen to testify that there was no medical evidence of physical abuse, . . . [and] (e) failed to investigate and obtain medical records, school records, and counselor's records." (R.2-20 at 11-12).[1]

As to the first prong of the Strickland test, the district court agreed with the state court's finding that counsel's decision not to obtain medical records was a reasonable

---

[1] The majority interprets Holsomback's claim to include, in addition to the claim that counsel failed to contact this particular physician and failed to obtain particular medical records, the claim that counsel failed "to conduct any investigation into the conceded lack of medical evidence, including his failure to consult with any physicians concerning the significance of the lack of medical evidence in the case." Holsomback's claim, as framed by the district court, is narrower than the claim framed by the majority.

The evidence is in and the case is closed. If the majority concludes that the district court mischaracterized the claim, what it should do is vacate the district court's judgment and remand for further proceedings. Instead, the majority enters its own findings of fact and conclusions of law on the recharacterized claim.

1

tactical decision. (R.2-20 at 29). I agree. At the evidentiary hearing held on Holsomback's first state post-conviction petition, Holsomback's trial counsel testified that he did not subpoena medical records because the prosecutor told the jury that there was no medical evidence that the child had been sexually abused and because trial counsel had been told there was no physical medical evidence that the child had been abused. (R.1-7-Ex.C at 8-9, 12).

The district court also agreed with the state court's finding that counsel's decision not to call Dr. Nolen to testify was a reasonable tactical decision. Counsel testified that had he called a doctor to testify, he ran the risk of the doctor wavering in his testimony. (R.1-7-Ex.C at 9-10). Further, there is no indication from the record that counsel should have been aware of the substance of the testimony Dr. Nolen later said he would have given -- that it was "medically impossible" for repeated acts of abuse to have occurred without physical signs of abuse. (R.1-7-Ex.F at 24-29). Dr. Nolen never examined Jeffrey Holsomback for signs of abuse and did not treat him during the relevant time period. (R.1-7-Ex.C at 49, 54-55). This court has held that strategic or tactical decisions amount to ineffective assistance of counsel only if they are so plainly unreasonable that no competent attorney would have chosen them. See Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987); see also Smith v. Dugger, 840 F.2d 787, 795 (11th Cir. 1988) (noting that counsel's decision not to

present certain evidence or to choose a certain defense because of a strategic or tactical decision is afforded a strong presumption of correctness that is "virtually unchallengeable"). I cannot say, on this record, that trial counsel's tactical decisions were unreasonable.

I am also not convinced that counsel's decisions prejudiced Holsomback. At the evidentiary hearing held on Holsomback's first post-conviction petition, Dr. Nolen testified that he saw Jeffrey Holsomback several months after the alleged abuse occurred, but that he did not perform any tests or any examination to rule out the possibility of abuse. (R.1-7-Ex.C at 49). When asked again whether he examined the child for sexual abuse, Dr. Nolen stated that he "never saw him at a point in time after it had happened or in the time frame where it would have really been relevant" and that he was under the impression that an evaluation as to alleged sexual abuse "was being handled elsewhere." (R.1-7-Ex.C at 54-55). Further, Dr. Nolen testified that when he was in medical school, child abuse cases were usually handled by pediatric residents and that if a child who allegedly had been abused were to visit his office, he would refer the case to the Children's Hospital for further evaluation. (R.1-7-Ex.C at 53-54). In light of all of this testimony, I am not convinced that Dr. Nolen's testimony would have been significant.

Likewise, I cannot say that the use of Jeffrey Holsomback's medical records,

3

and specifically the report from the examination conducted by Dr. Williams, would have been helpful. While the record does indicate that there were no signs of tears or trauma to the victim's anus or rectum, the final diagnosis by Dr. Williams was "sexual abuse." (R.1-1). The use of the medical records with a diagnosis of "sexual abuse" could have been more harmful than helpful to Holsomback's case.

I agree with the district court's conclusion that Holsomback failed to demonstrate that he was prejudiced by counsel's performance. I would affirm the decision of the district court.